AO 91 (REV.5/85) Criminal Complaint

AUSA Robert Milan (312) 469-6132

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**MAGISTRATE JUDGE SCHENKIER**

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

v.

CASE NUMBER **09 CR 271**

MOHAMMAD ALKARAMLA

**UNDER SEAL**

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief: On or about December 30, 2008, at Chicago, in the Northern District of Illinois, Eastern Division Mohammad Alkaramla defendant herein:

through the use of the United States mail, willfully made a threat concerning an attempt to be made to kill, injure, and intimidate individuals and unlawfully to damage and destroy a building and other real property by means of an explosive,

in violation of Title 18, United States Code, Section 844(e). I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the facts contained in the Affidavit which is attached hereto and incorporated herein.

Signature of Complainant
Tim Lauster
Special Agent, FBI

Sworn to before me and subscribed in my presence,

March 19, 2009
Date

at Chicago, Illinois
City and State

SIDNEY ISCHENKIER, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## FILED

MAR 1 9 2009
MAR 19 2009
**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

## AFFIDAVIT

I, Timothy F. Lauster, Jr., being duly sworn, do hereby state and depose as follows:

### Introduction

1. I am currently employed as a Special Agent with the Chicago, Illinois Field Office of the Federal Bureau of Investigation (FBI). I have been so employed for three years. I am investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code, including Section 844(unlawful use of explosives). I am presently detailed to a domestic terrorism squad operating within the Joint Terrorism Task Force (JTTF) of the Chicago Division of the FBI. The FBI JTTF is charged with the investigating any and all acts of terrorism including violations relative to the threat to use explosive devices.

2. I am submitting this affidavit in support of an arrest warrant for Mohammed T. Alkaramla, born April 6, 1984, for violation of 18 U.S.C. §§ 844(e).

3. The information set forth in this affidavit is based upon my personal observations, review of evidence obtained, and training and experience as a law enforcement agent, as well as my communications with representatives from private industry and other law enforcement personnel, including fellow Federal Bureau of Investigation agents and task force officers assisting in the

investigation, agents of other federal investigative agencies, and state and local law enforcement officers. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not include each and every fact and matter observed by me or known to the government.

## Background

4. As set out below, the FBI has been conducting an investigation into the allegation that Mohammed Alkaramla mailed a threatening letter to the Ida Crown Jewish Academy. The letter threatened to set bombs in the area of the letter recipients unless the recipients "back OFF" from Gaza in Palestine. The investigation, as detailed herein, shows that there is probable cause to believe that Alkaramla violated 18 U.S.C. §§ 844(e).

5. 18 U.S.C. §§ 844(e) states in pertinent part: Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

## Investigative Actions

6. On February 12, 2009, a federal search warrant was

executed at Alkaramla's residence on North Artesian, in Chicago, Illinois. Pursuant to this warrant, a Sony VAIO laptop computer and a booklet of $0.32 United States Postal stamps depicting two swans coming together to form a heart shape were seized, amongst other items. The Sony laptop was seized from the living room area of the apartment. The booklet of stamps was seized from a dresser drawer located in a bedroom designated "room 4" by the search team. The booklet of stamps had one stamp missing from the book and appeared to be of the same type and value used to mail the threat letter.

7.     During the execution of the search warrant, Mohammed Alkaramla agreed to be interviewed by a Joint Terrorism Task Force Officer and your Affiant. Alkaramla stated he was employed by Comcast and worked as a technical support employee. Alkaramla stated he owned a Sony laptop, which he purchased approximately 1 year ago. Alkaramla provided the interviewers with a password to access the laptop. Alkaramla denied sending any threat letters, and stated that due to his work, school, and family commitments, he did not have time to send threatening letters to anyone. Alkaramla stated he had never heard of the Associated Talmud Torahs website and had never visited the site. Alkaramla stated he did not have an explanation for the discovery of a book of stamps found in the dresser of his bedroom, designated "room 4" by the search team. Alkaramla stated he did not know how his fingerprint could have been found on the envelope used to mail the aforementioned threat letter to the Ida Crown Jewish Center.

8.     During the execution of the search warrant, a FBI agent

disconnected the Ethernet cable from the back of a desktop computer located in a bedroom of the residence. The agent then connected this Ethernet cable to an FBI unclassified laptop computer. After connecting to the network, the FBI agent determined the network traffic to be routing from IP address 24.12.73.112.

9. A subpoena was issued to Comcast Internet for subscriber records associated with the IP address 24.12.73.112 at the time of the search warrant execution. The subpoena return identified the IP address as being assigned to Individual A located at an address on North Oakley Avenue, Chicago, Illinois.

10. A subpoena was issued to Comcast Internet for subscriber records associated with Tawsiq Alkaramla residing at Alkaramla's residence on North Artesian Avenue, Chicago, Illinois. The subpoena return identified the aforementioned address as having Comcast Digital Voice service. There were no records of Comcast Internet service associated with the account.

11. On March 13, 2009, your affiant contacted a representative from Comcast and requested clarification on the aforementioned subpoena returns. Per the Comcast Analyst, Comcast assigns IP addresses based on a combination of the cable modem and the devices attached to the modem. As a result, a new IP address may be temporarily assigned when a new device is attached to the network. If the new device is only attached to the network for a short period of time, there is a chance the system will not log this IP address assignment. Furthermore, Comcast provides subpoena results based on information returned from the Comcast Billing and Provisioning systems. It is

possible that the information in these systems does not accurately reflect the physical location of the provisioned cable modem. For example, if a provisioned cable modem is transferred from one address to another address without notifying Comcast, this change of address will not be entered into the Comcast records. In regards to the Comcast Digital Voice service, the cable modems provided with the Digital Voice service have the functionality to provide Internet access. However, this functionality is disabled by default, but a user with proper technical background may be able to activate this functionality. As a company policy, Comcast does not monitor its subscriber's usage of the cable modem and any modifications to the modem would likely go undetected by the company.

12. Between March 12, 2009 and March 16, 2009, a JTTF Officer and your affiant reviewed a forensic image of the hard drive from the Sony laptop Alkaramla stated belonged to him, which was generated by a forensic scientist from the Chicago Regional Forensic Computer Laboratory. During the review, your affiant identified a significant portion of the threat letter in a block of hard drive free space, to include "Will Give You until 01.15.2009 to back OFF from Gaza in Palestine or will set our explosive in your areas, it very important to make a quick action before we make our decisions to set bombs in the fowling addresses:" This block of free space contained the entire content of the threat letter with the exception of the last two addresses listed on the bottom of the letter.

13. In addition, the index.dat file, a file which logs websites visited by the Microsoft Internet Explorer, had entries for the schools.asp page

from the Associated Talmud Torahs website on December 30, 2008. This webpage contained the addressing information believed to be utilized in the threat letter. The index.dat also logged access to www.google.com website indicating searches for the following terms on December 30, 2008: "Bomb attack + Israel + letters", "Jewish elementary schools in Chicago", and "Sample Thread <sic> Letter".

14. The booklet of US Postal Stamps seized during the execution of the search warrant and the stamp affixed to the threat letter envelope were submitted to the FBI Laboratory Questioned Documents Division for review and analysis. The FBI Lab Scientist assigned to the case conducted micro-fiber analysis on the specimens and concluded the stamp and stamp booklet originated from the same sheet of paper.

15. A U.S. Postal Inspection Service Inspector was interviewed in regards to the $0.32 swan stamp affixed to the threat letter envelope. The stamp was issued on February 4, 1997. The stamp was not printed in 1998 and production ceased in January 1999 due to a postage rate increase. Approximately 1.66 billion stamps of this type were printed.

16.     Your affiant believes, based on the above information, that probable cause exists to charge Alkaramla with a violation of 18 U.S.C. §§ 844(e).

Timothy F. Lauster, Jr.
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me
this _____ day of March, 2009.

U.S. Magistrate Judge Sidney T. Schenkier

Page 7 of 7