In the

# United States Court of Appeals

### For the Seventh Circuit

———————————————

No. 16-2191

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MOHAMMAD ALKARAMLA,

*Defendant.*

APPEAL OF: PHILIP L. BERNSTEIN

———————————————

Appeal from the United States District Court,
for the Northern District of Illinois, Eastern Division.
No. 09 CR 271 — **Rebecca R. Pallmeyer**, *Judge.*

———————————————

ARGUED APRIL 10, 2017 — DECIDED SEPTEMBER 25, 2017

———————————————

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Philip Bernstein, an attorney appointed under the Criminal Justice Act ("CJA or the Act") to represent an indigent defendant in federal district court, hired forensic expert Erich Speckin to analyze evidence for the defense. But Bernstein disregarded the Act's rules and failed to obtain the district court's preapproval for the hire.

Instead, he submitted a CJA voucher for the expert's services six months after his client was sentenced. The amount requested was well in excess of the statutory cap, and the district judge was unwilling to approve it. In the meantime, Speckin sued Bernstein for the money in Michigan state court. The state court entered a default judgment against Bernstein.

Bernstein then asked the federal district judge to vacate the state-court judgment or enjoin its enforcement. Not wanting to interfere with the state-court proceedings, the judge denied Bernstein's request. That was the right instinct, but the judge had no authority to consider the merits at all. We vacate and remand with instructions to dismiss Bernstein's motion for lack of subject-matter jurisdiction.

## I. Background

The Criminal Justice Act requires each federal district court to maintain and oversee a system that provides legal representation to federal criminal defendants who cannot afford it. 18 U.S.C. § 3006A(a). The statute allows a CJA-appointed defense attorney to petition the court for expert services and instructs the judge to approve the request when the services are necessary and the defendant can't afford them. *Id.* § 3006A(e)(1). If the defense attorney doesn't obtain the judge's preapproval, however, the judge may retroactively approve funds only if the "timely procurement of necessary services could not await prior authorization." *Id.* § 3006A(e)(2)(B). The CJA caps expert fees at $2,400 except in extraordinary circumstances. *Id.* § 3006A(e)(3).

Here the district judge appointed Bernstein to defend Mohammad Alkaramla, who was charged in 2009 with

No. 16-2191                                                          3

mailing a bomb threat in violation of federal law. At a pretrial status hearing, Bernstein mentioned that the defense might need expert analysis, and the judge instructed him to submit the required CJA petition. But instead Bernstein hired Speckin, a forensic expert from Michigan, without obtaining the court's approval.

It turned out that Speckin's services were quite expensive: He billed a total of $15,142.90, more than six times the CJA cap. Needless to say, the district judge wasn't pleased when Bernstein submitted a reimbursement voucher for that amount six months after the defendant was sentenced. She informed Bernstein that she wouldn't approve the voucher at that number. Bernstein did nothing more until Speckin sued him for the funds in Michigan state court, alleging breach of contract. The state court entered a default judgment against Bernstein.

Bernstein then returned to the federal district court for help. He asked the judge to vacate the state-court judgment, order Speckin to release all claims against him, and compensate Speckin from CJA funds. The judge denied the motion and Bernstein appealed.

## II. Discussion

The parties and district judge seemed to agree that the judge could exercise jurisdiction over Bernstein's motion, but we're required to assess the issue regardless. *See Stearnes v. Baur's Opera House, Inc.*, 3 F.3d 1142, 1144 (7th Cir. 1993). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

4                                                          No. 16-2191

(1994) (citations omitted). No statute authorizes the district court to review the Michigan judgment.

Bernstein argues that the district court's supervisory authority under the CJA provides a jurisdictional basis for his motion. Since he hired Speckin outside the bounds of the CJA, however, their dispute is one of private contract and governed by state law. Bernstein also relies on the All Writs Act, which allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. But the All Writs Act does not itself confer jurisdiction; it simply authorizes a federal court to issue writs in aid of jurisdiction it already has. *Lambert v. Buss*, 498 F.3d 446, 454 (7th Cir. 2007). Since no jurisdiction exists here, the All Writs Act cannot help Bernstein.

Moreover, two statutes affirmatively prohibit the district court from adjudicating Bernstein's motion. First, under 28 U.S.C. § 1257, the Supreme Court alone oversees the state courts' application of federal law. The *Rooker-Feldman* doctrine, which implements that statute, "precludes lower federal court jurisdiction over claims seeking review of state court judgments." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) (quotation marks omitted); *see also Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The paradigmatic *Rooker-Feldman* litigant is one who, like Bernstein, loses in state court and asks a federal district court to modify the state decision. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine's complexity comes in determining whether the relief a litigant seeks "is tantamount to vacating the state judgment." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675

No. 16-2191                                                    5

(7th Cir. 2017). But there's no complexity when the litigant directly asks a federal district court to do exactly that.

Second, the Anti-Injunction Act prohibits federal courts from granting an "injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The term "proceedings" encompasses the enforcement of a judgment, which is effectively what Bernstein asks us to enjoin. *See Pelfresne v. Village of Williams Bay*, 865 F.2d 877, 879–80 (7th Cir. 1989). And none of the Anti-Injunction Act's three exceptions apply. The first and third exceptions are plainly inapplicable because nothing in the CJA comes close to authorizing an injunction of state-court proceedings and there's no federal-court judgment that the Michigan court's decision could have possibly infringed. The second exception—"where necessary in aid of its jurisdiction"—refers to rare situations (almost always involving in rem actions) in which the state-court proceeding would "tend to impair or defeat the jurisdiction" of the federal court. *Adkins v. Nestlé Purina PetCare Co.*, 779 F.3d 481, 484, 485 (7th Cir. 2015) (quotation marks omitted) (emphasis omitted). Because the Michigan judgment didn't prevent the district court from adjudicating its case, the exception doesn't apply.

Bernstein's other requests fare no better. Federal courts may not circumvent the Anti-Injunction Act's clear command by directing an injunction "at the victorious state court litigants, rather than at the state court itself." *Pelfresne*, 865 F.2d at 880. That means we have no authority to order Speckin to release his state claims against Bernstein.

6                                                              No. 16-2191

Finally, the district court's jurisdiction over the appointment and payment of experts for Alkaramla's defense has long passed. Nearly seven years after judgment was entered, it's far too late for Bernstein to petition the court for disbursement of CJA funds on behalf of an expert who was never CJA appointed.

We therefore VACATE the district court's order and REMAND with instructions to dismiss Bernstein's motion for lack of subject-matter jurisdiction.

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit